**TUILEFANO, acting for the Aitulagi Family,
of Malaeloa, Objector**

v.

**GOVERNMENT OF AMERICAN SAMOA, Applicant
and
ASUEMO U. FUIMAONO, for the Village Council
of Aoloau, Warrantor of Deed**

No. 166-1964

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Aoloau" in Aoloau]

December 24, 1964

R. P. Phillips, Counsel for Tuilefano.
Apelu, Counsel for Fuimaono.
Donald Tindal, Acting Attorney General of American
Samoa, Entered appearance only.

OPINION OF THE COURT

ROEL, *Associate Justice.*

Came on to be heard the above entitled and numbered case wherein Applicant, the Government of American Samoa, by and through the Office of the Attorney General, filed an application with the Office of the Registrar of Titles of American Samoa to register a certain surveyed parcel of land called "Aoloau," containing 2.229 acres, more or less, as the property of the Government of American Samoa.

Upon notice of the proposed registration of the land, objection was filed by Tuilefano as representative of the Aitulagi Family.

Applicant, the Government of American Samoa, sought to register the land on the basis that said land was conveyed in fee simple through a warranty deed dated June 12, 1964, for the purpose of building a government school thereon. Fuimaono, acting for the Village Council of Aoloau, appeared to defend the title to said land against Tuilefano as warrantors of said title to the Government of American Samoa. Tuilefano based his objection to the registration claiming that the land in question was the communal land of the Aitulagi Family. The Government of American Samoa did not actively partake in the litigation, except to the extent of making an opening statement that the Government had filed the application to register the land in reliance of the warranty deed from the Chiefs of the Village of Aoloau and that the purpose of securing said land was to erect a school thereon. The Acting Attorney General stated that it would abide by the decision of the Court as to the ownership of the land in question; that Fuimaono had retained Apelu to defend the title.

The day prior to the trial the Court, in the presence of all interested parties, viewed the land. It was noted that the Government school buildings were already erected thereon.

The warranty deed from the Village Council of Aoloau to the Government of American Samoa reads as follows:

"THIS DEED, made this 12 day of June, 1964, between the Council of the Village of Aoloau, represented by High Chief Asuemu U. Fuimaono, of the Village of Aoloau, County of Leasina, Western District, Island of Tutuila, American Samoa, of the first part, and the Government of American Samoa, of the second part:

"WITNESSETH, that the said parties of the first part, for and in consideration of the sum of One Dollar and Other Valuable Consideration to the said parties of the first part in hand paid by the

595

said parties of the second part, the receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell, convey and confirm unto the said party of the second part, their successors and assigns, all the following described real property:

"All that certain real property situated in the Village of Aoloau, County of Leasina, Western District, Island of Tutuila, American Samoa, being a portion of the land known as 'Aoloau' claimed by the Council of the Village of Aoloau, represented by High Chief Asuemu U. Fuimaono, on behalf of the Village of Aoloau, and more particularly described as follows:

"Beginning at a Concrete monument located from an iron pin in the center of the road from Aoloau to Pava'ia'i running on azimuth 167°06'17" thereon 72.45 ft.; which has coordinates X=292640.13 and Y=228218.12, Plane coordinate system of American Samoa, 1962, thence running from said point of beginning on azimuth 168°17'10" a distance of 283.10 ft. to an iron pin; thence on azimuth 152°54'47" a distance of 50.00 ft. to an iron pin; thence on azimuth 255°27'10" a distance of 75.02 ft. to an iron pin; thence on azimuth 165°27'52" a distance of 200.00 ft. to an iron pin; thence on azimuth 75°28'00" a distance of 257.26 ft. to an iron pin; thence on azimuth 345°28'20" a distance of 200.00 ft. to an iron pin; thence on azimuth 255°27'10" a distance of 75.07 ft. to an iron pin; thence on azimuth 260°31'39" a distance of 48.12 ft. to an iron pin; thence on azimuth 349°21'14" a distance of 139.35 ft. to an iron pin; thence on azimuth 80°21'14" a distance of 57.34 ft. to an iron pin; thence on azimuth 353°44'04" a distance of 103.95 ft. to a concrete monument; thence on azimuth 352°44'04" a distance of 132.70 ft. to an iron pin; thence on azimuth 266°59'09" a distance of 155.37 ft. to an iron pin; thence on azimuth 167°06'17" a distance of 72.45 ft. to monument of beginning. Containing 2.229 acres more or less.

"TOGETHER with all and singular the hereditaments and appurtenances thereunto belonging, or anywise appertaining, and rents, issues and profits thereof; and all the estate, right, title, interest, claim and demand whatsoever of the said parties of the first part, either in law or equity, of, in and to the above bargained premises with the hereditaments and appurtenances.

"TO HAVE AND TO HOLD the said premises above bargained and described, with the appurtenances, unto the said party of the second part, their successors and assigns, forever, to them and their own proper use, benefit and behoof.

"The parties of the first part, for themselves, their heirs, executors and administrators do hereby convey, grant, bargain and agree to and with the said party of the second part, their successors or their assigns, that at the time of ensealing and delivery of this presents they are well seized of the premises above conveyed, as of good, sure, perfect, absolute and indefeasible estate of inheritance, either in fee simple or that the land is the communal land of their families and that they have good right, full power and lawful authority to grant, bargain, sell and convey the same in the manner and form aforesaid.

"The parties of the first part further declare in the event that any third party or parties contest the transfer of title as mentioned above they they [sic] shall warrant and defend and indemnify the party of the second part against any and all claims and expenses of any kind whatsoever that the party of the second part undergoes toward the perfection of its title. The parties of the first part hereby grant to the party of the second part, their successors or assigns, quiet and peaceable possession against all and every person or persons lawfully claiming the whole or any part thereof, the said parties of the first part shall and will WARRANT AND FOREVER DEFEND.

"IN WITNESS WHEREOF the said parties of the first part have hereunto set their hands and seals the day and year first above written.

"WITNESSES:

s/*Alfred J. Gergely*                VILLAGE COUNCIL OF
                                                  AOLOAU

s/*Mary Meredith*                   s/*A. U. Fuimaono*

                                               HIGH CHIEF ASUEMU U.
                                               FUIMAONO

"TERRITORY OF AMERICAN
    SAMOA                         )
                                           )   ss.
"COUNTY OF MAUPUTASI)
——————————————————)

597

"On this 12 day of June, 1964, before me the undersigned officer, personally appeared High Chief Asuemu U. Fuimaono, known to me to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

"In witness whereof I hereunto set by hand and official seal.

s/ Alfred J. Gergely
ALFRED J. GERGELY
Attorney General
American Samoa"

We will not attempt to discuss all the testimony which amounted to more than fifty (50) pages in two days of trial, since it is all in the record. We will say that the evidence brought out by witnesses for the two parties was contradictory and at times irreconcilable, and even the testimony of witnesses for the same party was inconsistent. The credibility of the witnesses in many instances had to be measured in connection with their demeanor and the manner in which questions were answered.

Applicant's grantors claimed ownership of the land in question by virtue of first occupancy coupled with a claim of ownership. They contended that the land in question had been in their active possession since 1943 when the people of Aoloau cleared this portion from the virgin bush, at the same time that they cleared the land to relocate their Village of Aoloau there from its previous location. Testimony indicated that ever since 1943 when the people came there from Old Aoloau, the land in question had been designated for school purposes, and there was uncontradicted evidence that at least two schools had previously been situated in the exact location as the land in question, dating back to 1943, before the present buildings were erected. Applicant's grantors' testimony further emphasized that the whole Village of Aoloau had been occupying the land adjacent to the land in question in what is now Aoloau Fou since 1943 and that there are scores of houses situated

598

thereon belonging to the people of Aoloau, and that many people have built several houses on the same spot of land since 1943.

Grantors' witnesses testified to the effect that since 1943 when the people cleared the land for the relocation of their Village and up to the present no member of the Aitulagi Family had either objected to the clearing or occupation of the land in question nor had they occupied or raised plantations on said land. They also testified that the people of Aoloau relocated to its present location without the permission of the Aitulagi people, and they emphatically denied that a delegation of Aoloau chiefs had secured permission for the relocation of the Village from the Aitulagi Family in 1946. Grantors' witnesses further testified that the buildings for school purposes built on the land in question since 1943 had been put up without any objection of the Aitulagi Family, nor had the Aitulagi Family objected when a permanent church building was constructed immediately adjacent to the land in question and that the said church was used for the benefit of the people of Aoloau Fou.

Tuilefano, the Objector, did not deny that the Aoloau people were occupying the land immediately adjacent to the land in question. However, Tuilefano claimed ownership of the land in question for the Aitulagi Family on the grounds that the land was traditionally Aitulagi Family land from time immemorial, and on the fact that the Aoloau people had come to resettle their village in their new location only after permission was granted to the Aoloau people by Aitulagi. He testified that such permission had been granted by Aitulagi when a delegation of Aoloau chiefs went to Malaeloa in 1946 to seek permission to move their village from the old to the new site. Tuilefano testified there were no terms, conditions or limitations when the land was granted for the use of the people from Aoloau. He testified that no control

was held over the land once this permission was granted, and that he was aware there were a great many houses of the Aoloau people immediately adjacent to the land in question and that all these houses had been built and rebuilt without permission of and without objection from Aitulagi. Tuilefano testified that he had been in the vicinity of the land in question only once since 1943. He testified he personally had no plantation in the land in question, but that Aitulagi people had plantations there before 1946.

Tuilefano also testified that on two occasions—in 1950 and 1962—he had filed with the High Court of American Samoa affidavits seeking to arrest claim of the land in question by adverse possession. The unsworn-to-writing filed in 1962 contradicts the testimony given by the Aitulagi witnesses at the trial. Aitulagi witnesses testified that the meeting at which permission was given to the Aoloau people was friendly without any objections being voiced by any of the chiefs of Aitulagi present. One of the witnesses testified that the chiefs of Aitulagi never discussed the matter amongst themselves separately, but that permission was granted readily in the presence of the Aoloau and Aso people, and that the meeting had lasted only part of the morning. Aitulagi's testimony repeatedly was to the effect that there was no condition or limitation set regarding the use of the land or cultivation of plantations thereon. The instrument filed in 1962 reads in part as follows:

"After a heated debate on the request, the Matuas of Aitulagi, by virtue of their political office, granted the request voiced by the above named chiefs under certain conditions, one of which denied to the people of the new village the rights to start on any new cultivation without prior approval of the Matuas of Aitulagi."

Counsel for Objector stated that if the Court found that the land in question was the property of Objector, Aitulagi would be glad to convey the land to the Govern-

ment of American Samoa on the same conditions as included in the warranty deed now in question.

The uncontradicted testimony was that the Aoloau people had houses and plantations on the land in question, as well as adjacent thereto at least as early as 1946 and very possibly as far back as 1943 and that said planting and building were done without permission from or objection of the Aitulagi people. Neither were there any legal actions ever filed by Aitulagi to keep the Aoloau people from cultivating the land or building thereon.

It may be explained here that affidavits or other instruments filed to arrest the statute of limitations against claim by adverse possession are so filed without general notice to the public or to the party which such affidavit may affect. In other words, anyone can file such an affidavit claiming any land which he may or may not own without the persons affected being notified, and such affidavits are not even sworn to. Under the statute it is very easy for anyone to make a false claim regarding the ownership of land and putting a cloud on the title of as much land as he may want to include in his instrument filed in Court. We think this is dangerous and unfair to the occupants and owners of the land covered by said claim.

After considering the testimony, the evidence and the argument of counsel, it is the unanimous opinion of this Court that the 1946 meeting alleged by the Objector at which Aitulagi supposedly granted the Aoloau people permission to occupy the land in question and adjacent thereto never took place, and, certainly that no chief of the Aoloau people requested said permission from Aitulagi. Objector failed to produce any unbiased testimony regarding said meeting. He could have called to the stand as his own witness either Lualemaga or any of the living chiefs of Aoloau Village which he claimed were present at said meeting.

It is further the unanimous opinion of this Court that the land in question was originally cleared from the virgin bush by the people from the Village of Aoloau in 1943, and that they had complete, continuous, uninterrupted possession of said land in question from 1943 to the present; that the people of Aoloau were the owners of the land in question by virtue of first occupancy coupled with a claim of owner- ship at the time they executed the warranty deed to the land in question in favor of the Government of American Samoa, and that the Government of American Samoa is the present owner of the land in question.

"Mere claim of ownership of bush land will not establish an original title to it. Occupation coupled with a claim of ownership will establish ownership of that bush land before such occupation. Sec. II Blackstone 8. The view that the occupant who first takes possession of land with the intention of having it as his own thereby becomes the owner of it is approved in Maine's Ancient Law (3rd. Am. Ed.) at Page 238. This doctrine of acquisition of an original title by first occupant, accompanied by claim of ownership, was approved by this Court in the case of *Faataliga v. Fano*, No. 80-1948 (Am. Samoa)." *Soliai v. Lagafua*, No. 5-1949, High Court of American Samoa.

In conclusion, it is the unanimous decision of this Court, and it is hereby ORDERED, ADJUDGED AND DE- CREED by the Court as follows:

1. That the application filed by the Government of Amer- ican Samoa to register the land "Aoloau" as reflected in the survey, consisting of 2.229 acres, more or less, as the property of the Government of American Samoa be and the same is hereby granted, and that the said land be registered in the Office of the Registrar of Titles as the property of the Government of American Samoa.

2. That the claim filed by the Objector, Tuilefano, on behalf of the Aitulagi Family be and the same is hereby disallowed and dismissed.

3. Court costs in the amount of $50.00 to be paid by Objector, Tuilefano, within 30 days.

The Registrar of Titles will be advised of this decision.